| | |
|---|---|
| MICHAEL BUSCH,<br>3740 55th Ave. S., Apt. 205<br>Fargo, ND 58104<br>Derivatively on Behalf of DANAHER<br>CORPORATION, | Case No. |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| RAINER M. BLAIR<br>c/o Danaher Corporation<br>2200 Pennsylvania Ave., N.W., Suite 800W<br>Washington, DC 20037 | **REDACTED PUBLIC VERSION** |
| MATTHEW R. MCGREW<br>c/o Danaher Corporation<br>2200 Pennsylvania Ave., N.W., Suite 800W<br>Washington, DC 20037 | |
| EMMANUEL LIGNER<br>c/o Danaher Corporation<br>2200 Pennsylvania Ave., N.W., Suite 800W<br>Washington, DC 20037 | |
| FEROZ DEWAN<br>c/o Danaher Corporation<br>2200 Pennsylvania Ave., N.W., Suite 800W<br>Washington, DC 20037 | |
| LINDA FILLER<br>c/o Danaher Corporation<br>2200 Pennsylvania Ave., N.W., Suite 800W<br>Washington, DC 20037 | |
| TERI LIST<br>c/o Danaher Corporation<br>2200 Pennsylvania Ave., N.W., Suite 800W<br>Washington, DC 20037 | |
| WALTER G. LOHR, JR.,<br>c/o Danaher Corporation<br>2200 Pennsylvania Ave., N.W., Suite 800W<br>Washington, DC 20037 | |

JESSICA L. MEGA
c/o Danaher Corporation
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

MITCHELL P. RALES
c/o Danaher Corporation
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

STEVEN M. RALES
c/o Danaher Corporation
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

PARDIS C. SABETI
c/o Danaher Corporation
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

A.  SHANE SANDERS
c/o Danaher Corporation
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

JOHN T. SCHWIETERS
c/o Danaher Corporation
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

ALAN G. SPOON
c/o Danaher Corporation
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

RAYMOND C. STEVENS
c/o Danaher Corporation
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

ELIAS A. ZERHOUNI
c/o Danaher Corporation
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

JOAKIM WEIDEMANIS
c/o Danaher Corporation
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

JENNIFER L. HONEYCUTT
c/o Danaher Corporation
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

and

DANIEL A. RASKAS
c/o Danaher Corporation
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

Defendants,

- and -

DANAHER CORPORATION
2200 Pennsylvania Ave., N.W., Suite 800W
Washington, DC 20037

Nominal Defendant.

## VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Plaintiff Michael Busch, by and through his undersigned counsel, brings this action derivatively on behalf of nominal defendant Danaher Corporation ("Danaher" or the "Company") against certain of its current and former officers and directors for breaches of fiduciary duty, insider trading, violations of the federal securities laws, and related misconduct. The allegations below are based on the knowledge of Plaintiff as to his own acts and upon information and belief as to all other matters based upon a review of information uncovered during the course of the investigation conducted by Plaintiff's counsel which includes, among other things, (1) information publicly disseminated by Danaher, including press releases, public filings with the U.S. Securities

and Exchange Commission ("SEC"), investor conference transcripts, and postings on its website, (2) news reports and other publicly available sources, (3) internal corporate records produced by the Company to Plaintiff pursuant to 8 *Del. C.* § 220, and (4) court dockets, filings, and orders in pending or related litigation involving Danaher. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder derivative action on behalf of nominal defendant Danaher. Plaintiff asserts claims for breach of fiduciary duty, unjust enrichment, insider trading, violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder, and related misconduct against certain of the Company's current and former officers and directors for their alleged wrongful conduct between at least January 27, 2022 and October 23, 2023.

2. Danaher is a global science and technology conglomerate that operates through businesses in Biotechnology, Life Sciences, and Diagnostics. During the relevant period, bioprocessing was among Danaher's most important segments, supplying products and services used by pharmaceutical and biotechnology customers to develop and manufacture biologic drugs, vaccines, and therapies. By 2022, bioprocessing accounted for nearly one-quarter of Danaher's annual sales and was central to the Company's growth narrative.

3. This bioprocessing business had benefited enormously from the COVID-19 pandemic, as customers purchased huge quantities of Danaher's products and services to support vaccine and therapeutic development and manufacturing. But as the pandemic eased, that extraordinary demand began to fade. Large pharmaceutical customers had built up inventory during the pandemic and began working through those stockpiles instead of placing new orders.

Meanwhile, smaller biotechnology customers faced worsening funding constraints and tightened their spending. Together, these trends materially weakened order activity, anticipated revenue, and growth prospects in Danaher's critical bioprocessing business.

4.      Rather than candidly disclose these adverse developments, the Individual Defendants (defined *infra*), comprising the Company's officers and directors, hid these facts and misleadingly reassured investors that demand remained strong, that customer destocking and excess inventory issues were limited, that biotechnology funding pressures only marginally affected the business, and that Danaher's bioprocessing growth trajectory remained intact—all the while enriching themselves with lucrative executive and director compensation and improper stock sales, as alleged herein.

5.      Internal corporate records produced by Danaher pursuant to 8 *Del. C.* § 220 ██████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

6.      The truth emerged through a series of corrective disclosures in 2023. When Danaher first disclosed weakening bioprocessing demand, customer inventory issues, and reduced biotechnology customer activity, it characterized those problems as limited, manageable, or temporary. However, by October 24, 2023, the full extent of deterioration was clearer: Danaher cut its full-year outlook yet again, acknowledged that customer demand had not recovered, and admitted that customers were still working through pandemic-era inventory. Down from its peak

of approximately $270 per share in August 2022, by October 25, 2023, Danaher's stock price had dropped to just $192.65.

7. This wrongful conduct has damaged the Company and subjected it to costly litigation. On July 17, 2023, a Danaher investor who had suffered losses filed a securities class action against Danaher and certain of its senior executives in the U.S. District Court for the District of Columbia, captioned *Hawkins v. Danaher Corp., et al.*, No. 1:23-cv-02055-AHA (D.D.C.) (the "Securities Class Action").

8. On August 4, 2025, U.S. District Judge Amir H. Ali denied in part a motion to dismiss filed by the Danaher defendants. The Court held that the operative complaint made "particularized allegations that the defendants' statements omitted important information about demand" and that the complaint "supports the inference that the defendants disregarded the obvious danger of misleading investors." Among other things, Judge Ali sustained claims based on statements concerning then-existing demand, customer inventory stockpiling, biotechnology funding pressures, and Danaher's April 2022 projections. The Securities Class Action and Judge Ali's opinion on the motion to dismiss are discussed in greater detail below. The Securities Class Action subjected Danaher to substantial litigation exposure to a class of defrauded stock purchasers arising from the same misconduct alleged herein and has resulted in a proposed settlement.

9. Shareholder value has also been severely damaged by the Individual Defendants' misconduct and other wrongdoing, including their breaches of fiduciary duty. This shareholder derivative action seeks to recoup losses that Danaher has sustained (and will continue sustaining) in connection therewith.

10. The Company's misrepresentations also enabled Company insiders to line their own pockets. While Danaher's stock traded at artificially inflated prices, the Insider Trading

Defendants (defined *infra*) collectively sold over $64 million worth of stock. These sales ███

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

11. Additionally, in causing or allowing the Company to issue false and misleading statements, exposing the Company to the costly Securities Class Action, and committing the other alleged wrongdoing (or failing to prevent it despite clear warning signs), each Individual Defendant named herein (and a majority of the members of the current Danaher Board) acted in bad faith and faces a substantial likelihood of liability for breaching their fiduciary duties. Furthermore, multiple members of Danaher's Board are not independent or are otherwise conflicted.

12. Under these circumstances, any pre-suit demand on the Board to take action on the asserted claims would be futile and is therefore excused, as set forth herein. Through this action, Plaintiff, on behalf of the Company, seeks damages, restitution, disgorgement of profits, and other remedies as appropriate.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b) and 21D of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

14. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c) and (d) and § 1401. Danaher and the Individual Defendants have conducted business in this District and/or their actions

have had an effect in this District, the Company maintains its principal executive offices within this District, and a substantial portion of the wrongs complained of herein occurred in this District. The Court has personal jurisdiction over each defendant because each defendant is either a corporation that conducts sufficient business in this District or an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction permissible under traditional notions of fair play and substantial justice.

16. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

**THE PARTIES**

A. **Plaintiff**

17. *Plaintiff Michael Busch* is a current holder of 112 shares of Danaher stock and has continuously owned Danaher shares since October 29, 2021. Plaintiff will fairly and adequately represent Danaher's interests in this action.

B. **Nominal Defendant**

18. *Nominal Defendant Danaher Corporation* is a Delaware corporation with its principal executive offices located at 2200 Pennsylvania Ave., N.W., Suite 800W, Washington, DC 20037. Danaher's common stock trades on the New York Stock Exchange under the ticker symbol "DHR."

C. **Individual Defendants**

19. *Defendant Rainer M. Blair* has served as Danaher's President and Chief Executive Officer ("CEO") and as director since September 2020. Blair joined Danaher in 2010 and served as a Danaher officer since 2014, including as Vice President Group Executive between March 2014 and January 2017 and as Executive Vice President between January 2017 and September 2020.

During the relevant period, Blair served on the Executive Committee, Finance Committee, and Science and Technology Committee. According to the proxy statement Danaher filed with the SEC on March 25, 2026, Blair beneficially owned 569,014 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 25, 2026 was $187.15, Blair beneficially owned approximately $106,490,970 worth of Danaher common stock as of that date. Blair is named as a defendant in the Securities Class Action. The following chart summarizes Defendant Blair's total reported compensation of $41,099,309 for fiscal years 2022 and 2023, as described in the Company's proxy statements:

| Fiscal Year | Salary | Stock Awards | Option Awards | Incentive Comp. | Other Comp. | Total |
|---|---|---|---|---|---|---|
| 2022 | $1,300,000 | $7,239,213 | $7,029,061 | $4,222,400 | $405,353 | $20,196,027 |
| 2023 | $1,300,000 | $8,068,474 | $7,509,417 | $3,541,200 | $484,191 | $20,903,282 |

20.     ***Defendant Matthew R. McGrew*** has served as Danaher's Executive Vice President since January 2019 and previously served as Chief Financial Officer ("CFO") from January 2019 until February 28, 2026. According to the proxy statement Danaher filed with the SEC on March 25, 2026, McGrew beneficially owned 231,145 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 25, 2026 was $187.15, McGrew beneficially owned approximately $43,258,787 worth of Danaher common stock as of that date. McGrew is named as a defendant in the Securities Class Action. The following chart summarizes Defendant McGrew's total reported compensation of $14,679,422 for fiscal years 2022 and 2023, as described in the Company's proxy statements:

| Fiscal Year | Salary | Stock Awards | Option Awards | Incentive Comp. | Other Comp. | Total |
|---|---|---|---|---|---|---|
| 2022 | $878,460 | $2,197,854 | $2,133,848 | $1,783,270 | $189,912 | $7,183,344 |
| 2023 | $966,310 | $2,555,306 | $2,377,957 | $1,350,418 | $246,087 | $7,496,078 |

21.     *Defendant Emmanuel Ligner* served as President and CEO of Cytiva from March 2020 until October 2023. Ligner also served as Vice President and Group Executive of the Biotechnology reporting segment from September 2022 until October 2023. Ligner is named as a defendant in the Securities Class Action.

22.     *Defendant Feroz Dewan* has served as a director since June 2022. During the relevant period, Dewan served as a member of the Finance Committee, Nominating and Governance Committee, and Science and Technology Committee. According to the proxy statement Danaher filed with the SEC on March 25, 2026, Dewan beneficially owned 6,846 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 25, 2026 was $187.15, Dewan beneficially owned approximately $1,281,229 worth of Danaher common stock as of that date. The following chart summarizes Defendant Dewan's total reported director compensation of $542,749 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2022 | N/A | $144,070 | $80,546 | $224,616 |
| 2023 | N/A | $221,730 | $96,403 | $318,133 |

23.     *Defendant Linda Filler* has served as a director since December 2005. During the relevant period, Filler served as a member and Chair of the Nominating and Governance Committee and as a member of the Science and Technology Committee. According to the proxy statement Danaher filed with the SEC on March 25, 2026, Filler beneficially owned 51,376 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 25, 2026 was $187.15, Filler beneficially owned approximately $9,615,018 worth of Danaher common stock as of that date. The following chart summarizes Defendant

Filler's total reported director compensation of $750,441 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2022 | N/A | $276,839 | $91,469 | $368,308 |
| 2023 | $189,000 | $96,730 | $96,403 | $382,133 |

24.     ***Defendant Teri List*** has served as a director since September 2011. During the relevant period, List served as a member of the Audit Committee and Compensation Committee. The Company's Board determined that List is an "audit committee financial expert" within the meaning of SEC regulations. According to the proxy statement Danaher filed with the SEC on March 25, 2026, List beneficially owned 25,215 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 25, 2026 was $187.15, List beneficially owned approximately $4,718,987 worth of Danaher common stock as of that date. The following chart summarizes Defendant List's total reported director compensation of $626,441 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2022 | $125,000 | $91,839 | $91,469 | $308,308 |
| 2023 | $125,000 | $96,730 | $96,403 | $318,133 |

25.     ***Defendant Walter G. Lohr, Jr.*** served as a director from 1983 until May 2024. During all or portions of the relevant period, Lohr served as a member of the Audit Committee, Compensation Committee, Nominating and Governance Committee, and Finance Committee. According to the proxy statement Danaher filed with the SEC on March 27, 2024, Lohr beneficially owned 449,989 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 27, 2024 was $248.77, Lohr beneficially

owned approximately $111,943,764 worth of Danaher common stock as of that date. The following chart summarizes Defendant Lohr's total reported director compensation of $650,441 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2022 | $139,000 | $91,839 | $91,469 | $322,308 |
| 2023 | $135,000 | $96,730 | $96,403 | $328,133 |

26. **_Defendant Jessica L. Mega_** served as a director from November 2019 until February 2026. During all or portions of the relevant period, Mega served as a member of the Compensation Committee and Science and Technology Committee. According to the proxy statement Danaher filed with the SEC on March 26, 2025, Mega beneficially owned 7,831 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 26, 2025 was $212.40, Mega beneficially owned approximately $1,663,304 worth of Danaher common stock as of that date. The following chart summarizes Defendant Mega's total reported director compensation of $626,441 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2022 | $125,000 | $91,839 | $91,469 | $308,308 |
| 2023 | $125,000 | $96,730 | $96,403 | $318,133 |

27. **_Defendant Mitchell P. Rales_** co-founded Danaher and has served as a director since 1983. During the relevant period, M. Rales served as a member and Chair of the Executive Committee and as a member and Chair of the Finance Committee. Defendant M. Rales is the brother of Defendant Steven Rales. According to the proxy statement Danaher filed with the SEC on March 25, 2026, M. Rales beneficially owned 33,001,391 shares of Danaher common stock,

amounting to approximately 4.7% of the Company's total outstanding shares. Given the price per share of Danaher common stock at the close of trading on March 25, 2026 was $187.15, M. Rales beneficially owned approximately $6,176,210,326 worth of Danaher common stock as of that date. In 2022 and 2023, Danaher provided a full-time executive assistant to M. Rales to support him in his role as an executive officer. In 2022 and 2023, Danaher provided tax and accounting services to M. Rales at a cost of approximately $330,319 and $340,425, respectively. In 2022 and 2023, portions of the amounts Danaher paid to persons who provided services to M. Rales and Steven Rales were reimbursed. M. Rales made personal use of designated Danaher office space in 2022 and 2023 at a cost to Danaher of approximately $301,105 and $306,732, respectively. M. Rales does not receive compensation for his service as a Danaher director. The following chart summarizes Defendant M. Rales's reported executive officer compensation of $883,754 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Salary | 401(k) Contribution | Excess Contribution Program Contribution | Total |
|------|--------|---------------------|------------------------------------------|-------|
| 2022 | $419,000 | $3,771 | $19,406 | $442,177 |
| 2023 | $419,000 | $3,771 | $18,806 | $441,577 |

28. **_Defendant Steven M. Rales_** co-founded Danaher and has served as a director since 1983. During the relevant period, S. Rales served as Chair of the Board and as a member of the Executive Committee, Finance Committee, and Science and Technology Committee. Defendant S. Rales is the brother of Defendant M. Rales. According to the proxy statement Danaher filed with the SEC on March 25, 2026, S. Rales beneficially owned 42,240,297 shares of Danaher common stock, amounting to approximately 6.0% of the Company's total outstanding shares. Given the price per share of Danaher common stock at the close of trading on March 25, 2026 was

$187.15, S. Rales beneficially owned approximately $7,905,271,584 worth of Danaher common stock as of that date. In 2022 and 2023, Danaher provided a full-time executive assistant to S. Rales to support him in his role as an executive officer. In 2022 and 2023, Danaher provided tax and accounting services to S. Rales at a cost of approximately $330,319 and $340,425, respectively. In 2022 and 2023, portions of the amounts Danaher paid to persons who provided services to M. Rales and Steven Rales were reimbursed. S. Rales made personal use of designated Danaher office space in 2022 and 2023 at a cost to Danaher of approximately $301,105 and $306,732, respectively. In 2022 and 2023, S. Rales was provided with a personal car and parking at an annual cost to Danaher of approximately $3,985. S. Rales does not receive compensation for his service as a Danaher director. The following chart summarizes Defendant S. Rales's reported executive officer compensation of $882,204 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Salary | 401(k) Contribution | Excess Contribution Program Contribution | Total |
|---|---|---|---|---|
| 2022 | $419,000 | $21,244 | N/A | $440,244 |
| 2023 | $419,000 | $22,960 | N/A | $441,960 |

29.     ***Defendant Pardis C. Sabeti*** served as a director from November 2019 until December 2024. During the relevant period, Sabeti served as a member of the Science and Technology Committee. According to the proxy statement Danaher filed with the SEC on March 27, 2024, Sabeti beneficially owned 9,178 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 27, 2024 was $161.91, Sabeti beneficially owned approximately $1,486,010 worth of Danaher common stock as of that date.

The following chart summarizes Defendant Sabeti's total reported director compensation of $626,441 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2022 | N/A | $216,839 | $91,469 | $308,308 |
| 2023 | N/A | $221,730 | $96,403 | $318,133 |

30.     ***Defendant A. Shane Sanders*** has served as a director since May 2021. During the relevant period, Sanders served as a member of the Audit Committee and Nominating and Governance Committee. The Company's Board determined that Sanders is an "audit committee financial expert" within the meaning of SEC regulations. According to the proxy statement Danaher filed with the SEC on March 25, 2026, Sanders beneficially owned 9,036 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 25, 2026 was $187.15, Sanders beneficially owned approximately $1,691,087 worth of Danaher common stock as of that date. The following chart summarizes Defendant Sanders's total reported director compensation of $628,441 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2022 | N/A | $216,839 | $91,469 | $308,308 |
| 2023 | N/A | $223,730 | $96,403 | $320,133 |

31.     ***Defendant John T. Schwieters*** served as a director from July 2003 until May 5, 2026. During the relevant period, Schwieters served as a member and Chair of the Audit Committee and as a member of the Nominating and Governance Committee. The Company's Board determined that Schwieters is an "audit committee financial expert" within the meaning of SEC regulations. According to the proxy statement Danaher filed with the SEC on March 25, 2026,

Schwieters beneficially owned 61,834 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 25, 2026 was $187.15, Schwieters beneficially owned approximately $11,572,233 worth of Danaher common stock as of that date. The following chart summarizes Defendant Schwieters's total reported director compensation of $684,441 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2022 | $150,000 | $91,839 | $91,469 | $333,308 |
| 2023 | $158,000 | $96,730 | $96,403 | $351,133 |

32.  ***Defendant Alan G. Spoon*** has served as a director since July 1999. During the relevant period, Spoon served as a member and Chair of the Compensation Committee. According to the proxy statement Danaher filed with the SEC on March 25, 2026, Spoon beneficially owned 105,815 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 25, 2026 was $187.15, Spoon beneficially owned approximately $19,803,277 worth of Danaher common stock as of that date. The following chart summarizes Defendant Spoon's total reported director compensation of $666,441 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2022 | N/A | $236,839 | $91,469 | $328,308 |
| 2023 | N/A | $241,730 | $96,403 | $338,133 |

33.  ***Defendant Raymond C. Stevens*** has served as a director since February 2017. During the relevant period, Stevens served as a member of the Audit Committee and Science and Technology Committee. According to the proxy statement Danaher filed with the SEC on March 25, 2026, Stevens beneficially owned 15,152 shares of Danaher common stock. Given the price

per share of Danaher common stock at the close of trading on March 25, 2026 was $187.15, Stevens beneficially owned approximately $2,835,697 worth of Danaher common stock as of that date. The following chart summarizes Defendant Stevens's total reported director compensation of $626,441 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|------|------|------|------|------|
| 2022 | N/A | $216,839 | $91,469 | $308,308 |
| 2023 | N/A | $221,730 | $96,403 | $318,133 |

34. ***Defendant Elias A. Zerhouni*** has served as a director since 2009. During the relevant period, Zerhouni served as a member and Chair of the Science and Technology Committee and as member of the Nominating and Governance Committee. According to the proxy statement Danaher filed with the SEC on March 25, 2026, Zerhouni beneficially owned 37,308 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 25, 2026 was $187.15, Zerhouni beneficially owned approximately $6,982,192 worth of Danaher common stock as of that date. The following chart summarizes Defendant Zerhouni's total reported director compensation of $666,441 for fiscal years 2022 and 2023, as disclosed in the Company's proxy statements:

| Year | Fees Earned or Paid in Cash | Stock Awards | Option Awards | Total |
|------|------|------|------|------|
| 2022 | N/A | $236,839 | $91,469 | $328,308 |
| 2023 | N/A | $241,730 | $96,403 | $338,133 |

35. ***Defendant Joakim Weidemanis*** served as an Executive Vice President of Danaher from December 2017 until July 2024. Prior thereto, Weidemanis served in various Danaher roles since 2011, including as a Danaher Vice President and Group Executive of the Product Identification platform, Group President of Videojet, FOBA/Alltec from 2013 to 2014, President

of Videojet from 2012 to 2013, and President of Developed Markets for Videojet. According to the proxy statement Danaher filed with the SEC on March 27, 2024, Weidemanis beneficially owned 380,369 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 27, 2024 was $248.77, Weidemanis beneficially owned approximately $94,624,396 worth of Danaher common stock as of that date. The following chart summarizes Defendant Weidemanis's total reported compensation of $16,698,302 for fiscal years 2022 and 2023, as described in the Company's proxy statements:

| Fiscal Year | Salary | Stock Awards | Option Awards | Incentive Comp. | Other Comp. | Total |
|---|---|---|---|---|---|---|
| 2022 | $972,400 | $2,585,694 | $2,510,454 | $1,951,750 | $206,319 | $8,226,617 |
| 2023 | $1,008,480 | $2,958,575 | $2,753,420 | $1,535,411 | $215,799 | $8,471,685 |

36.     ***Defendant Jennifer L. Honeycutt*** served as an Executive Vice President of Danaher from January 2021 until September 2023, reporting directly to Defendant Blair. Prior thereto, Honeycutt served in various Danaher roles since 1999, including as a Vice President and Group Executive overseeing Pall, IDT, and the Danaher Life Sciences platform in China, as President of Pall, and as President of Beckman Coulter Life Sciences from 2013 to 2016. According to the proxy statement Danaher filed with the SEC on March 29, 2023, Honeycutt beneficially owned 69,756 shares of Danaher common stock. Given the price per share of Danaher common stock at the close of trading on March 29, 2023 was $219.40, Honeycutt beneficially owned approximately $15,304,466 worth of Danaher common stock as of that date. The following chart summarizes Defendant Honeycutt's total reported compensation of $5,870,204 for fiscal year 2022, as described in the Company's proxy statement:

| Fiscal Year | Salary | Stock Awards | Option Awards | Incentive Comp. | Other Comp. | Total |
|---|---|---|---|---|---|---|
| 2022 | $802,500 | $1,680,547 | $1,631,738 | $1,548,830 | $206,589 | $5,870,204 |

18

37.     ***Defendant Daniel A. Raskas*** served as Danaher's Senior Vice President of Corporate Development from February 2010 until at least March 2025. Prior thereto, Raskas served in various Danaher roles since November 2004, including as Vice President of Corporate Development.

38.     Together, Defendants Blair, McGrew, Ligner, Dewan, Filler, List, Lohr, Mega, Mitchell Rales, Steven Rales, Sabeti, Sanders, Schwieters, Spoon, Stevens, Zerhouni, Weidemanis, Honeycutt, and Raskas are collectively referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

39.     By reason of their positions as officers, directors, and/or fiduciaries of Danaher, and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owe (and owed) the Company and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care, and are (and were) required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.

40.     The Individual Defendants are (and were) required to act in furtherance of the best interests of Danaher and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

41.     Each director and officer of the Company owes (and owed) Danaher and its stockholders the fiduciary duty to exercise good faith and diligence in administering the Company's affairs and using and preserving its property and assets, as well as the highest obligations of fair dealing.

42.     In addition, as officers and directors of a publicly held company, the Individual Defendants have (and had) a duty to promptly disseminate accurate and truthful information about

the Company's financial and business prospects so that the market price of the Company's stock is (and was) based on truthful information.

43. The Individual Defendants, because of their positions of control and authority as directors and officers of Danaher, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

44. The misconduct of the Individual Defendants involves culpable violations of their obligations, the absence of good faith on their part, and a reckless disregard for the fiduciary duties owed to Danaher and its stockholders, which they knew posed a risk of serious harm to Danaher.

45. At all relevant times, each Individual Defendant was the agent of each other and of Danaher and was acting within the course and scope of such agency.

46. Accordingly, the Individual Defendants were responsible for ensuring that disclosures in the Company's reports and other documents filed with the SEC and statements issued publicly were materially complete and contained no significant misrepresentations or omissions.

47. The Company's website proclaims that its Board "is focused on putting ethical business practices first" and "follows key governance principles to ensure [it] operates at the highest level of excellence [and] drives stockholder interests…"[1] Additionally, the Company states: "We hold ourselves to the highest ethical standards."[2]

---

[1] Governance, DANAHER CORPORATION, https://www.danaher.com/governance (last visited May 18, 2026).

[2] Code of Conduct, DANAHER CORPORATION, https://www.danaher.com/governance/code-conduct (last visited May 18, 2026).

48. The Individual Defendants were bound by the Company's Code of Conduct (the "Code"), which applies to all Danaher employees and directors. The Code bears the subtitle "Growing with Integrity." The Code identifies that "We Compete for Shareholders" as one of Danaher's "Core Values." Among other things, the Code specifically states: "We earn our shareholders' investment and confidence by maintaining the highest standards of integrity, outstanding service for our customers and a deep commitment to building a better business every day." In the introductory note by Defendant Blair, he states: "As we grow, one thing that will not change is our commitment to operating with the highest ethical standards." Danaher "leaders" shall "[l]ead by example and be a role model for ethical behavior." On the subject of "Recordkeeping and Financial Reporting," the Code notes that "Investors, government officials and others rely on our accurate and honest books and records. Accurate information is also essential within the Company so that we can make informed business decisions." The Code further reflects that "[e]ach of us has a responsibility to ensure that the information we submit in all Danaher records is complete, accurate and understandable." The Code instructs all Danaher personnel to "[m]ake sure that all Company records including financial entries, expense reports and time sheets are clear and complete and do not hide the true nature of any transaction" and affirms that "[a]ssociates with any role in the preparation of Danaher Corporation's financial statements and disclosures have a responsibility to ensure that they are complete and do not contain any false or misleading statements." Regarding "External Communications," the Code states that "Danaher strives to provide clear and accurate information to the media, financial analysts and the public," which, among other things, "helps us maintain the trust of our shareholders, potential investors and government regulatory bodies." According to the Code, doing so "strengthens [Danaher's] corporate reputation." Finally, the Code prohibits insider trading, stating: "In the course of

business, you may become aware of material, nonpublic information about Danaher" and that using such information for personal gain is "not only unfair to investors" but also illegal.

49. The Company also maintains Corporate Governance Guidelines which identify that Board members are charged with "oversee[ing] the performance of the Company's business and management," emphasizing that their "primary responsibility" is to act in the "best interests" of Danaher.

50. According to Danaher's SEC filings, the Audit Committee's "Principal Responsibilities" include, among other things, assisting the Board in overseeing the: "quality and integrity of Danaher's financial statements," "effectiveness of Danaher's internal control over financial reporting," "performance of Danaher's internal audit function," and "compliance with legal and regulatory requirements." The Company's SEC filings also reflect that the Audit Committee assists the Board in overseeing Danaher's "major financial risk exposures" and "overall risk assessment and risk management policies."

51. The Audit Committee Charter expressly required its members to "assist the Board in overseeing (1) the integrity of the Company's financial statements, (2) the Company's compliance with legal and regulatory requirements, (3) the qualifications, performance and independence of the Company's independent auditors, and (4) the performance of the Company's internal audit function and independent auditors." The Audit Committee was also tasked with reviewing and discussing "major issues regarding accounting principles and financial statement presentations" and the "effectiveness of the Company's disclosure controls and procedures and internal control over financial reporting, and about any significant changes to the Company's internal control over financial reporting." Additionally, the Audit Committee's compliance oversight responsibilities included reviewing with management Danaher's "policies and

procedures designed to promote the Company's compliance with laws and regulations" and its "risk assessment and risk management policies." Under the Charter, Audit Committee members were specifically tasked with reviewing and discussing the Company's annual and quarterly reports with the SEC on Forms 10-K and 10-Q, earnings press releases, and financial information and earnings guidance provided to analysts and other members of the investment community.

52. The members of the Audit Committee were uniquely positioned to detect and address regulatory and compliance failures. The Individual Defendants who served on the Audit Committee during at least part of the relevant time period were Schwieters (Chair), List, Lohr, Sanders, and Stevens. During this time, the Company's Board determined that List, Schwieters, and Sanders were "audit committee financial experts" within the meaning of SEC regulations.

53. The Compensation Committee oversees the Company's compensation practices. According to the Company's SEC filings, the Compensation Committee's "Principal Responsibilities" include, among other things, "setting goals and objectives for, evaluating the performance of, and approving the compensation paid to, our executive officers" and "review[ing] and mak[ing] recommendations to the Board with respect to the adoption, amendment and termination of all executive incentive compensation plans and all equity compensation plans, and exercise all authority of the Board […] with respect to the oversight and administration of such plans." The Compensation Committee Charter expressly required its members to "[r]eview and approve goals and objectives with respect to the compensation" of the CEO and other Danaher executive officers, including the duty to "annually evaluate" their performance in light of these goals, objectives, and other relevant factors, and then "determine and approve" such annual compensation (including base salary, incentive pay, and other perquisites).

54.     The members of the Compensation Committee were uniquely positioned to detect and address regulatory and compliance failures in their evaluation of executive behavior and performance. The Individual Defendants who served on the Compensation Committee during at least part of the relevant time period were Spoon (Chair), List, Lohr, and Mega.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

55.     In committing the wrongful acts alleged herein, the Individual Defendants pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

56.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct were, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, insider trading, and unjust enrichment.

57.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

58.     In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are (and were) directors, officers, and executives of the Company, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

59.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In doing so, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or

substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

## FACTUAL ALLEGATIONS

**A.      Company Background.**

60.      Danaher is a global conglomerate comprised of numerous independently operating companies in the areas of Biotechnology, Life Sciences, and Diagnostics. Danaher was founded in 1984 after Defendants S. Rales and M. Rales repurposed their father's real estate investment trust into a vehicle for repeated corporate acquisitions. In 2005, Danaher entered the life sciences sector when it acquired Leica Microsystems.

61.      Danaher later expanded its Life Sciences platform through two major acquisitions central to the events alleged herein. In 2015, Danaher acquired Pall Corporation ("Pall") for $13.8 billion. Then, in 2020, Danaher acquired General Electric's biopharmaceutical support business GE Life Sciences (later renamed Cytiva) for $21.4 billion. Together, Cytiva and Pall formed the foundation of Danaher's emerging bioprocessing business within Life Sciences, which involved the development of biotherapeutic candidates, such as vaccines.

62.      At all relevant times, bioprocessing was a significant and material component of Danaher's business, and Danaher executives knew that the bioprocessing segment was the Company's lifeblood and a central part of the Company's growth narrative. Indeed, in September 2022, Defendant Blair described Danaher's bioprocessing unit as a "growth juggernaut" responsible for $7.5 billion in revenue. Danaher's September 2022 Analyst and Investor Day was also dedicated to bioprocessing, further underscoring the importance of the business to Danaher's strategy and investor communications.

63.      By 2020, Danaher's total revenue was $22.3 billion, $10.6 billion of which came from the Life Sciences segment.

25

64.     Additionally, Danaher strengthened its Diagnostics and other business segments with the acquisitions of Cepheid, a molecular diagnostics company, in November 2016 for nearly $4 billion and Integrated DNA Technologies ("IDT"), a provider of high-value consumables for genomics applications, in April 2019 for nearly $2 billion.

65.     In February 2020, the Secretary of the U.S. Department of Health and Human Services determined that the Food and Drug Administration ("FDA") could issue Emergency Use Authorizations ("EUAs") for unapproved tests used to diagnose or detect COVID-19. Given its acquisitions, Danaher emerged at the forefront of the COVID-19 pandemic and was well-positioned to benefit from the resulting demand for COVID-19 testing, vaccines, and therapeutics.

66.     IDT released a primer and probe kit for sale for companies that wanted to develop and market PCR tests. By May 2020, IDT shipped primer and probe kits with capacity to perform 30 million tests and opened a manufacturing facility in North Carolina. Cepheid received an EUA for a rapid COVID-19 test on March 20, 2020, and later received an EUA for a four-in-one rapid test for COVID-19, influenza A and B viruses, and respiratory syncytial virus ("RSV").

67.     Danaher's bioprocessing business also greatly benefited from the pandemic. In an October 21, 2021 earnings call, Defendant Blair referred to Cytiva and Pall together as the "most complete portfolio in the marketplace." Cytiva and Pall (and in turn Danaher) experienced a dramatic increase in demand for machinery, consumables, and services related to the COVID-19 vaccine and therapeutics because of the heavy demand for the products and services marketed by these subsidiaries to diagnose, treat, and prevent COVID-19. That same year, as a result, Danaher's total revenue soared to $29 billion, and sales in the Life Sciences segment skyrocketed from $6.95 billion in 2019 to $14.96 billion in 2021.

68. Danaher's stock price also increased from $121.39 per share in March 2020 to $329.01 per share in December 2021, reflecting the Company's substantial growth during the COVID-19 pandemic.

69. On September 15, 2022, Danaher separated Cytiva and Pall from the Life Sciences segment, restructuring into a new Biotechnology reporting segment. In 2022, bioprocessing accounted for nearly one-quarter of Danaher's $31.47 billion in sales.

70. As the severity of the COVID-19 pandemic eased, however, it became increasingly clear that Danaher's extraordinary growth in 2020 and 2021 was unsustainable in the long run. This was especially important for bioprocessing because the business had benefited from pandemic-driven demand while also becoming a key focus of the Company's long-term growth strategy.

71. Many of Cytiva's and Pall's customers were large pharmaceutical companies with drugs in late-stage development or commercial production, while others were small biotechnology startup companies engaged in early-stage product development. Instead of making new orders, Danaher's large pharmaceutical customers started stockpiling inventory in response to the supply chain constraints seen during the COVID-19 pandemic. At the same time, Danaher's smaller biotechnology customers faced funding constraints and tightened their budgets, further reducing orders for Danaher's bioprocessing operations. As a result, Danaher's bioprocessing business began to materially weaken.

72. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████ ████████████████████████
████████████

**B.** **Danaher's Materially False and Misleading Statements During the Relevant Period.**

73. Throughout 2022 and 2023, Danaher falsely and misleadingly represented various aspects of the post-COVID outlook for the Company's critical bioprocessing business. These statements concerned three related categories that were critical for investors' assessment of the Company: (i) then-existing demand for Danaher's COVID-related bioprocessing products and services; (ii) whether Danaher's large pharmaceutical company customers were stockpiling inventory and reducing new order activity; and (iii) whether smaller biotechnology customers were experiencing serious funding constraints that materially affected demand (and, in turn, customer orders).

74. These statements were particularly misleading because the Individual Defendants repeatedly assured investors that Danaher had mechanisms in place to closely track customer demand, inventory levels, and production needs. Danaher publicly emphasized the Danaher Business System, which involved frequent dialogue with customers regarding demand, inventory, and operational planning. Cytiva also partnered with the *Financial Times* on the Biopharma Resilience Index, an empirical survey of more than one thousand biopharmaceutical executives regarding supply chains, manufacturing capacity, and operational planning. These mechanisms gave Danaher access to information concerning the customer demand and inventory issues that the Individual Defendants later minimized or denied.

75. As Danaher officers and directors, the Individual Defendants were obligated to ensure that the Company's internal forecasts, public disclosures, and other external public messaging accurately reflected known adverse and markedly changing conditions in one of the Company's most important businesses. Instead, the Individual Defendants repeatedly assured investors that Danaher remained close to its customers, understood customer inventory levels, and

was not seeing significant demand deterioration from inventory stockpiling or biotech funding constraints. These assurances created the false impression that Danaher's bioprocessing business remained healthy (and indeed thriving), and that its growth trajectory was supported by actual customer activity.

76. For instance, on the April 21, 2022 earnings call, Defendant Blair addressed analyst questions concerning customer stockpiling. Blair stated that the Company was "very, very sensitive to this particular topic" and claimed that Danaher executives "are very, very close to our customers, working together with them, with their manufacturing schedules to ensure that we're not only able to meet their needs but also to ensure that we don't have inventory buildup in the system." He continued to provide assurances that, "generally speaking, we don't see a significant buildup in the supply chain." Blair also forecasted high-single-digit to low-double-digit growth in Danaher's bioprocessing business.

77. Additionally, according to four former Company employees (referred to as "Confidential Witnesses" in the Securities Class Action complaint), Danaher's executives reviewed financial results and projections for each subsidiary each month.[3] Company executives thus had "sophisticated means of gathering information from Danaher customers, including by conducting regular surveys and engaging in frequent dialogue on important topics." One Confidential Witness observed that during a "president's call" with the presidents of approximately sixty subsidiaries shortly after the April 21, 2022 earnings call, Blair had an outburst and stated

---

[3] While Plaintiff and his undersigned counsel have conducted their own investigation of the wrongdoings alleged herein, the Confidential Witness statements and related allegations drawn therefrom in this Verified Shareholder Derivative Complaint are based upon the allegations set forth in the operative Securities Class Action complaint, filed December 29, 2023.

that he "didn't like" the actual projections he was provided, so he and the investor relations team made up projections that looked better.

78. At the Bank of America Healthcare Conference on May 11, 2022, Bank of America analyst Derik de Bruin asked Defendant Blair to "clarify" the "confusion" created by the prior month's earnings call. Blair stated that "COVID vaccine and therapeutic revenue could be down by $500 million to $600 million" but that 2022 COVID vaccine and therapeutic sales would still be between $1.4 and $1.5 billion.

79. During the same conference, Defendant Blair addressed concerns about biotech customers. Blair stated that he was not "worry[ing] much about the [biotech] funding environment" because "the [drugs] that are earlier stage, including those early-stage biotechs, have an impact but only at the margin" and "[are] not driver[s] of the growth of the business. . . ."

80. On the July 21, 2022 earnings call, Defendant Blair claimed that the Company's core revenue growth was in the high single digits at Cytiva and Pall. He again emphasized Danaher's purportedly close contact with bioprocessing customers, stating that "as always we're working closely with customers to ensure they have the right inventory levels to support their planned activity."

81. Defendant Blair reduced the Company's 2022 outlook for COVID-related bioprocessing revenue from approximately $2 billion in 2021 to approximately $1 billion, yet continued to reassure investors regarding the underlying strength of the bioprocessing business.

82. When J.P. Morgan analyst Rachel Marie inquired about the "number of concerns about the potential slowdown in biotech funding," Blair responded:

> we haven't seen much of an impact of the biotech funding crunch here affecting the customer activity levels that we have. . . . So we think that today's cash positions in the biotechs, the quality of the projects that they are pursuing, as well as the funding environment still providing funding to those that are able to provide data

continues to be quite positive and is not impacting our business. . . . [and W]e are not concerned about what we see here for the next call it, 18, 24 months.

83. On the October 20, 2022 earnings call, Defendant Blair responded as follows to a question about the impact of inventory stocking on the 2023 outlook for the bioprocessing business:

We feel as though we are well positioned to understand the inventory situation. We do regular surveys with our customers. And as a result of that, we don't believe there is a general overstocking in the market. Having said that, we do think there are pockets where inventories are high. And those are based on customers ultimately changing their production plans, in other words, canceling orders specifically for COVID. . . . But I think it's important to note that those large players have many programs, and they're able to redeploy that inventory. . . . So we are confident that the strength of this market and its fundamentals remain very, very strong.

84. During the same call, Defendant Blair also revealed that 2022 orders had decreased by over 20%, that the Company's Bioprocessing division would generate only $800 million in COVID-related sales for 2022, and accordingly reduced the guidance for the bioprocessing division's growth to high single digits. Blair nonetheless attributed the decline in orders to other factors, claiming that they occurred because the Company:

meaningfully reduced [its] lead time. . . . And that's a pretty significant impact on the order placement cadence of our customers. . . . So what we're seeing right now is really the normalization of the marketplace coming from a red-hot pandemic fueled time of constraint, as long lead time for orders ramped up significantly. So order rates ramped up significantly to the supply chain now normalizing and customers adjusting their order cadence. . . . So the orders were negative, to repeat, but not unexpectedly and to be seen in the context of a market that is now readjusting.

85. Danaher's stock declined 6% to close at $243.08 on October 20, 2022.

86. At the Evercore HealthCONx Conference on November 30, 2022, Blair reiterated that "we really don't see an enormous amount of stocking going on." He stated that although there were "pockets where there has been some inventory buildup and they tend to be related to customers who had larger COVID-related programs," "those are really just pockets with larger

31

players who are quite well positioned to draw that down." Blair also revealed that COVID-19 demand would decrease from $800 million to $500 million as the "manifestation of what I just spoke of sort of these pockets in that change there."

87. On January 24, 2023, the Company announced that its base business core growth metric would "exclude revenues related to COVID-19 testing, vaccines and therapeutics, in addition to the exclusion of currency translation, acquisitions and divested product lines." On the earnings call that same day, Defendant Blair announced that 2023 COVID-related bioprocessing revenue would be $150 million—a drastic reduction from $800 million in 2022 and from the previously announced guidance of $500 million for 2023. Blair also revealed that Danaher's base business core sales would only grow by high single digits in 2023.

88. Bank of America analyst Derik de Bruin asked Defendant Blair about the inventory issues, and Blair responded:

> But we're also working through the inventory pockets that we spoke that were related to COVID programs. And we do expect Q1 to be an inflection point there that we work through the majority of that in Q1 and then after that, continue to see improvement.

89. When pressed further, Blair revealed that orders had decreased by the mid-teens in the fourth quarter of 2022, but reiterated the explanation that this "was as expected as customers continued to adjust for our shorter lead times." Blair also represented to shareholders that "underlying demand remains robust and unchanged" based on "spen[ding] the last several weeks talking to our customers to understand their planning assumptions for the year."

90. On January 24, 2023, Danaher's stock dropped to $271.58, and declined further on January 25, 2023 to $262.95.

91. Then, on the April 25, 2023 earnings call, Defendant Blair revealed:

> [D]emand at our large customers, who were primarily responsible for therapies in commercial production and later-stage clinical trials, remains robust and they're

32

steadily working through inventory they built during the pandemic. Based on our most recent customer conversations, we now expect the inventory normalization process to continue through the second half of the year.

92. Defendant Blair also acknowledged difficulties with "emerging biotech customers as more pronounced pressures on liquidity and funding accelerated their efforts to conserve capital leading to project delays and cancellations." On the same call, Blair revealed that the Company was now forecasting mid-single-digit base business growth, a reduction from the January 2023 prediction, and a high-single-digit core revenue decline.

93. Danaher's stock declined by 9% from $254.35 at close of trading on April 24, 2023, to $231.99 at close of trading on April 25, 2023.

94. On the July 25, 2023 earnings call, Defendant Blair announced that "[d]ue to near-term challenges within bioprocessing, we now anticipate low-single digit core revenue growth in our base business." He also revealed that "total core revenue [would] decline high single to low double digits for the year as a result of lower demand for COVID-19 testing, vaccines, and therapeutics." Blair expressed confidence that Danaher was "actively managing inventories down" and that "we've intensified our efforts [with managing inventory levels] really in order to get as much as possible of the stocking topic behind us here in 2023." Defendant McGrew added that Company leadership was "spending time with the customers in a pretty proactive way these days to understand what's on hand, what's the real need that you've got site by site so that we can help them manage down to an inventory level they are comfortable with."

95. The above statements in ¶¶ 73-94—made, approved, authorized, or otherwise permitted by the Individual Defendants—were materially false and misleading when made because they: (i) misrepresented and concealed that demand for Danaher's COVID-related bioprocessing products and services was materially weakening as the pandemic eased and customers shifted away from COVID-related programs; (ii) misrepresented and concealed that Danaher's large

pharmaceutical company customers had accumulated significant inventory during the pandemic and were reducing new order activity as they worked through existing inventory; (iii) misrepresented and concealed that smaller biotechnology customers were experiencing funding constraints, conserving capital, delaying projects, and reducing orders for Danaher's bioprocessing products and services; (iv) misleadingly portrayed declining orders as a benign function of shorter lead times or ordinary customer-order cadence, rather than as a reflection of deteriorating customer demand, excess inventory, and more serious adverse conditions and trends; and (v) created the false impression that Danaher's internal forecasts, customer communications, surveys, and other monitoring mechanisms supported the Individual Defendants' public assurances regarding customer demand, inventory levels, order activity, and the growth trajectory of the bioprocessing business.

96. Having chosen to speak about these subjects and related matters, the Individual Defendants were required to do so truthfully and completely. Instead, they reassured investors that Danaher's bioprocessing business remained healthy and that adverse trends were limited, temporary, or manageable, while failing to disclose that the business was already being materially impaired by declining COVID-related demand, inventory stockpiling, reduced customer orders, and tightening biotech funding conditions.

97. Additionally, as a result of these false statements and omissions, Danaher's positive statements about the Company's business, operations, growth prospects, and outlook were likewise materially misleading and lacked a reasonable basis. These statements exposed Danaher to foreseeable harm, including securities litigation, defense costs, reputational damage, and other losses to the Company, as described *infra*.

**C.** **The Truth Emerges and Danaher's Bioprocessing Narrative Finally Unravels.**

98. The truth concerning Danaher's struggling bioprocessing business emerged gradually as the Company repeatedly revised its outlook and acknowledged that the adverse trends previously minimized by the Individual Defendants were materially impairing customer demand, order activity, and revenue growth. Although Danaher disclosed earlier reductions in COVID-related bioprocessing revenue and reduced growth expectations throughout 2022 and 2023, those revisions were accompanied by continued assurances that the Company's bioprocessing business remained strong and that inventory and funding pressures were limited, temporary, and manageable.

99. The full extent of the deterioration became clearer on October 24, 2023, when Danaher cut its full-year outlook again. This time, Danaher projected a firm low-double-digit core sales decline and flipped modest base business growth into a low-single-digit base business core sales *decline*. During the earnings call that day, Defendant Blair acknowledged that "customers are still working through inventory built up during the pandemic" and further admitted that Danaher had "not seen an inflection point in orders," explaining that "we're sort of at the bottom here, bouncing along."

100. The October 24, 2023 disclosures confirmed that the adverse demand, inventory, order, and funding trends previously minimized by the Individual Defendants were pervasive and more permanent in nature—and that these conditions materially impaired Danaher's bioprocessing business and undermined the Company's prior growth narrative. Danaher's stock closed at $196.84 per share on October 24, 2023, down from its relevant-period high of $269.34 per share, and continued to decline the next day, closing at $192.65 per share on October 25, 2023 (representing a decline of more than 28% from the August 15, 2022 high point).

101. The Company has been severely damaged by the Individual Defendants' misconduct. This shareholder derivative action seeks to recoup losses that Danaher has sustained (and will continue sustaining) in connection with the Individual Defendants' misconduct and wrongdoing.

**INTERNAL DOCUMENTS** █████████████████████████████ ██████████████████████████████████████████ ████████████████████████████

102. By letter dated January 28, 2026, Plaintiff demanded that the Company produce certain books and records related to the above-described events pursuant to 8 *Del. C.* § 220. In response, ███████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████

103. ████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████████ ████

███████████████████████

104.

105.

106.

107.

108.

109.

110. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████

111. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

112. ████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

113. ████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████

114.

115.

116. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

117. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

118.

119.

120.

121.

# THE SECURITIES CLASS ACTION

122. The Individual Defendants' wrongful conduct alleged herein has damaged the Company and subjected it to costly litigation. In addition to the Company, the Securities Class Action names Blair, McGrew, and Ligner as defendants and asserts claims for violations of the federal securities laws under Sections 10(b) and 20(a) of the Securities Exchange Act and SEC Rule 10b-5. Generally, the Securities Class Action alleges that the defendants named therein misled investors by concealing that demand for Danaher's COVID-19 products and services was declining as the pandemic eased, that pharmaceutical customers had stockpiled inventory and were reducing new orders, and that smaller biotechnology customers were losing access to funding and thus reducing their orders.

123. By Order dated August 4, 2025, U.S. District Judge Amir H. Ali denied, in part, the motion to dismiss the Securities Class Action, holding that investors stated actionable claims under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 against Danaher, Blair, and McGrew, and adequately alleged that the defendants acted with a "strong inference of scienter," which includes an "intent to defraud" as well as "extreme recklessness to that effect." The Court held that the plaintiffs stated a claim as to certain present-tense statements concerning demand, inventory stockpiling, and biotechnology funding, as well as to the April 2022 forward-looking projections.

124. More specifically, Judge Ali held that the operative complaint "includes particularized allegations that the defendants' statements omitted important information about demand." The Court focused on the "numerous communications across earnings calls, conferences, and press releases about present demand" and held that they "cannot be characterized as mere puffery." Rather, these statements concerned issues that were central to investors'

45

assessment of Danaher's bioprocessing business. These included statements that Danaher did not "see a significant buildup" in inventory, that early-stage biotechnology customers affected the business only "at the margin," that the biotech funding crunch was not impacting customer activity, that Danaher did not believe there was "general overstocking in the market," and that "underlying demand remains robust and unchanged." Judge Ali also sustained allegations that Defendant Blair made up more favorable numbers for the April 2022 earnings call, crediting the confidential witness allegations.

125. Judge Ali further held that the plaintiffs adequately alleged that these statements were misleading when made. The Court explained that the complaint alleged that, by early 2022: (i) demand for COVID-19 products had declined as COVID-19 transitioned from pandemic to endemic conditions and customers shifted toward non-COVID products; (ii) large pharmaceutical customers had stockpiled enough inventory to reduce the need to place new orders; and (iii) around the same time, smaller biotechnology customers had begun scaling back projects after losing access to capital. Additionally, the April 2022 projections were plausibly misleading because they "ignored that demand for COVID-19-related equipment already tapered by the start of the class period in early 2022, and inventory stockpiling and funding pressures were impacting order placement for non-COVID-19 products by no later than mid-2022."

126. Finally, Judge Ali held that the lead plaintiffs adequately alleged scienter. The Court explained that "shareholders describe a series of market forces placing downward pressure on demand for Danaher's products and explain how the defendants had access to information about these market forces" and that "defendants had sophisticated means of gathering information from Danaher customers, including by conducting regular surveys and engaging in frequent dialogue on important topics." The Court also observed that the plaintiffs "allege even more specifically

46

that the defendants were not just gathering general information from customers, but that they were actively collecting information about these market forces and their effect on demand," based on "defendants' own statements to analysts who pressed the defendants for answers about these market forces and their likely impact on revenues." Responding to "pointed questions, the defendants reassured investors that they were confident in their projections because they were based on recent interactions with customers." Additionally, with respect to the April 2022 projections, the Court found that "Blair had actual knowledge of information that made his public statements inaccurate, but he ignored that information in favor of making statements that would appeal to investors." Such "actual knowledge," combined with other allegations that defendants had access to "crucial information," supported the inference that "defendants disregarded the obvious danger of misleading investors." At a minimum, Judge Ali found "these allegations support an inference that is at least as compelling as the competing inference that the defendants did not act extremely recklessly by making optimistic statements about the state of demand while omitting troubling information that was available to them."

127. The Securities Class Action exposed Danaher to substantial litigation risk, defense costs, and reputational injury. Indeed, the parties have now announced a proposed $172.5 million settlement of the Securities Class Action, subject to court approval. The settlement underscores the magnitude of liability exposure and corporate harm caused by the Individual Defendants' alleged misconduct.

**DANAHER REPURCHASED ITS STOCK DURING THE RELEVANT PERIOD AT ARTIFICIALLY INFLATED PRICES**

128. On July 16, 2013, Danaher's Board authorized a share repurchase program under which the Company could purchase up to twenty million shares of its common stock. While Danaher's share price was artificially inflated because of the false and misleading statements and

other misconduct alleged herein, the Individual Defendants serving on the Board caused the Company to repurchase its common stock, thereby substantially damaging the Company.

129. According to the Form 10-Q the Company filed with the SEC on October 20, 2022, between July 2, 2022 and August 1, 2022, the Company repurchased 3,906 shares of its common stock for approximately $1,069,619 at an average price of $273.84 per share.

130. At the time, Danaher's common stock was artificially inflated. After the full truth had emerged by October 25, 2023, Danaher's common stock closed at $192.65 per share. Using that price as a measure of Danaher's common stock's true value, the repurchased shares were only worth approximately $752,491. Accordingly, the Company overpaid for its common stock by approximately $317,128.

131. The Board's use of the repurchase program to buy Danaher stock during the relevant period at artificially inflated prices constituted corporate waste. No reasonable fiduciary acting in good faith would cause the Company to repurchase its own stock at prices artificially inflated by fraud.

## INSIDER SALES BY THE INSIDER TRADING DEFENDANTS

132. During the relevant period, defendants Blair, McGrew, Filler, List, Stevens, Lohr, Weidemanis, Honeycutt, and Raskas (together, the "Insider Trading Defendants") sold 241,019 Danaher shares for $64,502,806 in proceeds. At the time of these stock sales, each seller, as an officer or director of Danaher, was in possession of (and privy to) material adverse nonpublic information about the Company's true business health and prospects. Their sales were motivated in whole or in part by this material adverse nonpublic information regarding the Company's true business conditions, as alleged herein.

133. The Insider Trading Defendants sold most of their stock while Danaher's stock price was significantly distorted by the Company's material misstatements, and as high as $300.00 per share. By the time the truth finally came out, the share price dramatically declined. Indeed, once the full truth was revealed by October 25, 2023, the stock fell to $192.65 per share, and now trades at just $179.87 per share as of the close of trading on June 1, 2026.

134. These trades were unusual in timing and amount when compared to the Insider Trading Defendants' past trading activity. Furthermore, these trades reflected a coordinated pattern by Danaher corporate insiders to profit from insider trading, as multiple members of the Board and senior management sold massive quantities of stock. These sums are large by any measure and are material to each Insider Trading Defendant.

135. Trades made by each of the Insider Trading Defendants during the relevant period are shown below:

136. Defendant Blair sold 42,137 shares for total proceeds of $12,176,728, as follows:

| Trade Date | Number of Shares | Approximate Price | Approximate Proceeds |
| --- | --- | --- | --- |
| 2/1/22 | 5,898 | $287.29 | $1,694,436 |
| 2/24/22 | 3,235 | $271.56 | $878,497 |
| 8/15/22 | 25,000 | $300.00 | $7,500,000 |
| 2/1/23 | 5,976 | $267.50 | $1,598,580 |
| 2/22/23 | 2,028 | $249.12 | $505,215 |
| **Total** | **42,137** | | **$12,176,728** |

137. Defendant McGrew sold 20,417 shares for total proceeds of $5,590,272, as follows:

| Trade Date | Number of Shares | Approximate Price | Approximate Proceeds |
| --- | --- | --- | --- |
| 2/24/22 | 857 | $271.56 | $232,727 |
| 11/11/22 | 7,722 | $274.37 | $2,118,685 |

| Trade Date | Number of Shares | Approximate Price | Approximate Proceeds |
|---|---|---|---|
| 11/11/22 | 11,213 | $274.96 | $3,083,160 |
| 2/24/23 | 625 | $249.12 | $155,700 |
| **Total** | **20,417** | | **$5,590,272** |

138.  Defendant Filler sold 10,190 shares for total proceeds of $2,651,977, as follows:

| Trade Date | Number of Shares | Approximate Price | Approximate Proceeds |
|---|---|---|---|
| 7/28/23 | 7,268 | $260.25 | $1,891,497 |
| 7/28/23 | 2,922 | $260.26 | $760,480 |
| **Total** | **10,190** | | **$2,651,977** |

139.  Defendant List sold 3,490 shares for total proceeds of $918,917, as follows:

| Trade Date | Number of Shares | Approximate Price | Approximate Proceeds |
|---|---|---|---|
| 7/26/23 | 3,490 | $263.30 | $918,917 |

140.  Defendant Stevens sold 8,410 shares for total proceeds of $2,222,513, as follows:

| Trade Date | Number of Shares | Approximate Price | Approximate Proceeds |
|---|---|---|---|
| 1/25/23 | 3,540 | $264.33 | $935,728 |
| 1/25/23 | 2,640 | $264.22 | $697,541 |
| 1/25/23 | 2,230 | $264.24 | $589,244 |
| **Total** | **8,410** | | **$2,222,513** |

141.  Defendant Lohr sold 8,038 shares for total proceeds of $2,086,109, as follows:

| Trade Date | Number of Shares | Approximate Price | Approximate Proceeds |
|---|---|---|---|
| 7/22/22 | 642 | $273.84 | $175,805 |
| 7/22/22 | 3,906 | $273.84 | $1,069,619 |
| 5/5/23 | 3,490 | $240.88 | $840,685 |
| **Total** | **8,038** | | **$2,086,109** |

142. Defendant Weidemanis sold 97,453 shares for total proceeds of $26,049,615, as follows:

| Trade Date | Number of Shares | Approximate Price | Approximate Proceeds |
|---|---|---|---|
| 1/31/22 | 20,508 | $285.24 | $5,849,753 |
| 2/1/22 | 5,014 | $287.29 | $1,440,472 |
| 2/24/22 | 2,351 | $271.56 | $638,438 |
| 4/25/22 | 6,500 | $255.74 | $1,662,278 |
| 7/25/22 | 3,301 | $271.13 | $895,007 |
| 7/25/22 | 2,500 | $272.03 | $680,080 |
| 7/25/22 | 1,300 | $272.85 | $354,704 |
| 7/25/22 | 4,899 | $270.22 | $1,323,783 |
| 11/28/22 | 6,608 | $266.44 | $1,760,636 |
| 11/28/22 | 2,900 | $266.98 | $774,242 |
| 2/1/23 | 4,998 | $267.50 | $1,336,965 |
| 2/24/23 | 1,467 | $249.12 | $365,459 |
| 5/4/23 | 9,934 | $245.27 | $2,436,512 |
| 5/15/23 | 2,734 | $226.94 | $620,454 |
| 7/26/23 | 22,439 | $263.42 | $5,910,832 |
| **Total** | **97,453** | | **$26,049,615** |

143. Defendant Honeycutt sold 13,475 shares for total proceeds of $3,609,279, as follows:

| Trade Date | Number of Shares | Approximate Price | Approximate Proceeds |
|---|---|---|---|
| 2/24/22 | 652 | $271.56 | $177,057 |
| 2/25/22 | 3,777 | $278.64 | $1,052,406 |
| 5/16/22 | 170 | $249.19 | $42,362 |
| 11/10/22 | 8,211 | $265.00 | $2,175,915 |
| 2/24/23 | 479 | $249.12 | $119,328 |

| Trade Date | Number of Shares | Approximate Price | Approximate Proceeds |
|---|---|---|---|
| 5/15/23 | 186 | $226.94 | $42,211 |
| **Total** | **13,475** | | **$3,609,279** |

144.    Defendant Raskas sold 37,409 shares for total proceeds of $9,197,396, as follows:

| Trade Date | Number of Shares | Approximate Price | Approximate Proceeds |
|---|---|---|---|
| 2/1/22 | 2,359 | $287.29 | $677,717 |
| 2/24/22 | 994 | $271.56 | $269,931 |
| 2/1/23 | 2,486 | $267.50 | $665,005 |
| 2/24/23 | 510 | $249.12 | $127,051 |
| 5/31/23 | 19,847 | $228.50 | $4,535,040 |
| 7/28/23 | 11,213 | $260.65 | $2,922,652 |
| **Total** | **37,409** | | **$9,197,396** |

## HARM TO THE COMPANY

145.    As a result of the Individual Defendants' wrongdoing and other improprieties, Danaher disseminated improper public statements concerning its bioprocessing revenue outlook, core business operations, and financial prospects. This misconduct significantly damaged Danaher and its credibility with investors, as reflected by the Company's almost $8.3 billion market capitalization loss (5.6%) over two trading days following the October 2023 disclosures. The Individual Defendants have also caused other severe harm to the Company, including substantial loss of shareholder value and significant costs already incurred (and to be incurred) stemming from the events and allegations described herein and the costs of defending against the Securities Class Action and satisfying any portion of the proposed $172.5 million settlement of that action.

146.    Additionally, while engaging in or permitting the misconduct alleged above, the Individual Defendants caused the Company to repurchase approximately $1.1 million worth of its own common stock at artificially inflated prices. Consequently, Danaher overpaid for these approximately 4,000 shares by more than $300,000.

147. The Company's business, goodwill, and reputation with its business partners, regulators, and shareholders have also been gravely impaired, and the credibility of management and the Board is in serious doubt.

148. While the Individual Defendants' actions have severely harmed the Company, each of them has been awarded generous compensation and stock packages and otherwise profited through their wrongful conduct, including through the unlawful insider trading alleged herein, which must be recouped and disgorged.

## DEMAND WOULD BE FUTILE

149. Plaintiff brings this action derivatively in the right of and for the benefit of Danaher pursuant to Federal Rule of Civil Procedure 23.1 to redress injuries suffered by the Company as a direct and proximate result of the breaches of fiduciary duty and related misconduct by the Individual Defendants. Danaher is named as a nominal defendant solely in a derivative capacity.

150. Plaintiff will adequately and fairly represent the interests of Danaher in enforcing and prosecuting its rights, and Plaintiff has retained counsel experienced in shareholder litigation.

151. Plaintiff is a current Danaher shareholder and was a shareholder at the time of the wrongdoing alleged herein and continuously since that time.

152. Because current members of the Danaher Board: (i) lack independence, (ii) face a substantial likelihood of liability for the acts and omissions complained of herein, and/or (iii) directly financially benefited from this wrongdoing through their Danaher stock sales during the relevant period, prosecution of this action, independent of the current Board, is in the best interests of the Company and its stockholders.

153. Danaher is controlled by its Board, which at the time this action was commenced consisted of the following eleven members: Defendants Blair, Dewan, Filler, List, M. Rales, S.

Rales, Sanders, Spoon, Stevens, and Zerhouni (the "Demand Defendants"), along with non-party director Charles W. Lamanna.

154. Plaintiff has not made a pre-suit litigation demand on the Board to institute this action. Any such demand would be a futile and useless act because at least half of its current members (*i.e.*, at least six directors) are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action under the demand futility analysis set forth in *United Food and Comm. Workers Union v. Zuckerberg*, 262 A.3d 1034 (Del. 2021). Here, demand is excused as futile as to ten of the Board's eleven members.

155. These Demand Defendants all served on Danaher's Board during all or portions of the relevant period and are unable to exercise independent, objective judgment about whether to bring this action. They are addressed on a case-by-case basis below.

**Defendant Blair Is Interested in This Litigation Because He is a Defendant in the Securities Class Action**

156. Blair is disabled from considering a demand here because he is a defendant in the Securities Class Action, where claims for fraud have been upheld against him by Judge Ali under the heightened pleading requirements of the federal securities laws. The pendency of these claims for violating the federal securities laws in the Securities Class Action—where Blair faces a substantial likelihood of liability—renders it impossible for Blair to impartially consider a shareholder demand regarding the wrongdoing alleged herein.

**Insider Trading Defendants Blair, Filler, List, and Stevens Are Financially Interested in This Litigation**

157. Pre-suit demand is further excused as to Defendant Blair, as well as with regard to Defendants Filler, List, and Stevens, because they are financially interested in the outcome of this shareholder derivative litigation given their alleged insider trading. Blair, Filler, List, and Stevens financially benefited from the unlawful conduct complained of in this litigation in that they

participated in a scheme to artificially inflate the value of Danaher stock by issuing (or causing to be issued) materially false and misleading statements about Danaher's business prospects to the SEC and investors, and then capitalized on these false disclosures by selling Danaher stock at significantly inflated prices. ██████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████ During the relevant period, Defendants Blair, Filler, List, and Stevens reaped approximately $12.2 million, $2.7 million, $900,000, and $2.2 million in unlawful insider trading proceeds, respectively. The pecuniary value that Blair, Filler, List, and Stevens received from these trades is material to each of them and they would not jeopardize the value they received from these trades by considering a pre-suit demand in the instant case, as Plaintiff seeks disgorgement of all proceeds from the Individual Defendants stemming from unlawful conduct, including insider trading. It would be antithetical to their economic interests to initiate and pursue claims challenging their own Danaher stock sales. Accordingly, Blair, Filler, List, and Stevens cannot independently consider a pre-suit litigation demand.

**Defendants Blair, M. Rales, and S. Rales Are Not Independent**

158. Defendant Blair also lacks independence because he currently serves as an employee of the Company as its President and CEO. Blair's position and livelihood depend upon the good graces of the other Demand Defendants. For the 2025 fiscal year, Blair received $23,795,280 in compensation from the Company. This included $1,400,000 in salary, $9,292,370 in stock awards, $8,386,657 in option awards, $4,194,400 in other incentive compensation, and $521,853 in other compensation. These amounts are material to Blair, and Blair would never act to jeopardize these substantial payments by pursuing claims against the same directors who

determine his compensation and continued employment. Additionally, M. Rales and S. Rales co-founded Danaher and served as President and CEO, respectively, at various times. Danaher's most recent proxy statement filed with the SEC on March 25, 2026 concedes that Blair, M. Rales, and S. Rales are not independent.

**Ten of Eleven Demand Board Members Face a Substantial Likelihood of Liability for Their Wrongful Conduct**

159. Ten members of the current eleven-person Danaher Board—Defendants Blair, Dewan, Filler, List, M. Rales, S. Rales, Sanders, Spoon, Stevens, and Zerhouni—face a substantial likelihood of liability for their wrongful misconduct alleged herein, thereby excusing a pre-suit demand. These Demand Defendants presided over the Company during all (or substantially all) of the relevant period (between January 27, 2022 and October 23, 2023), corresponding to the class period in the Securities Class Action during which Danaher made the false and misleading statements described above. As detailed above, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

such misleading information or failing to correct these false statements, Defendants List, Sanders, and Stevens face a sufficiently significant likelihood of liability so as to render them interested. Accordingly, Defendants List, Sanders, and Stevens cannot adequately and independently consider a demand.

**Additional Demand Futility Allegations**

162. Demand is further excused because any suit by the Board to address the wrongdoing alleged herein would increase the exposure of nominal defendant Danaher to liability for violations of the federal securities laws in the Securities Class Action and could result in additional lawsuits being filed against members of the Board. If Danaher pursued its rights of action in this case, the Company's efforts would undercut or even compromise the defense and settlement of the Securities Class Action, making demand on each of the directors futile.

163. Under these circumstances, Plaintiff must act to prosecute the Company's claims on its behalf.

<u>**CLAIMS FOR RELIEF**</u>

<u>**Count I**</u>
<u>**Derivative Claim for Violations of Section 10(b) of the Exchange Act**</u>
<u>**and SEC Rule 10b-5 Against the Individual Defendants**</u>

164. Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

165. During the relevant period, the Individual Defendants disseminated or approved false and misleading statements about Danaher, which they knew or recklessly disregarded were false or misleading, and which were intended to deceive, manipulate, or defraud. Those statements and the Individual Defendants' conduct artificially inflated the price of the Company's common stock.

166. While the price of the Company's common stock was artificially inflated, the Individual Defendants participated in a scheme with the purpose and effect of defrauding Danaher by causing the Company to repurchase approximately $1.1 million worth of its own stock. In repurchasing these 3,906 shares, Danaher overpaid by approximately $317,000 given the true value of the Company's stock at the time.

167. The Individual Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by, among other things: (i) employing devices, schemes, and artifices to defraud; (ii) making untrue statements of material facts or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (iii) engaging in acts, practices, and a course of business that operated as a fraud or deceit upon Danaher in connection with the Company's repurchases of its own stock during the period of wrongdoing.

168. The Individual Defendants, individually and collectively, directly and indirectly, by the use of means or instrumentalities of interstate commerce or of the mail: (i) engaged and participated in a continuous course of conduct that operated as a fraud and deceit upon the Company; (ii) made various false or misleading statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; (iii) made the above statements intentionally or with severely reckless disregard for the truth; and (iv) employed devices and artifices to defraud in connection with the purchase and sale of Danaher stock, which were intended to, and did: (a) deceive Danaher and its shareholders regarding, among other things, the strength of then-existing demand for COVID-related bioprocessing products and services, large pharmaceutical customer stockpiling of inventory, and funding constraints facing smaller biotechnology

59

customers; (b) artificially inflate and maintain the market price of Danaher's stock; and (c) cause Danaher to repurchase the Company's stock at artificially inflated prices and suffer losses when the true facts became known. Throughout the relevant period, the Individual Defendants were in possession of material nonpublic information regarding the above matters.

169. The Individual Defendants, as directors and officers of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to and did control the conduct complained of herein and the content of Danaher's public statements.

170. Danaher would not have purchased these securities at the prices it paid, or at all, but for the artificial inflation in the Company's stock price caused by the Individual Defendants' false or misleading statements.

171. As a direct and proximate result of the Individual Defendants' wrongful conduct, the Company suffered damages in connection with repurchasing its own stock during the relevant period. By reason of such conduct, the Individual Defendants are liable to the Company pursuant to Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

172. Plaintiff, on behalf of the Company, has no adequate remedy at law.

**Count II**
**Derivative Claim for Violations of Sections 10(b) and 21D of the Exchange Act**
**Against Defendants Blair, McGrew, and Ligner**

173. Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

174. Defendants Blair, McGrew, and Ligner are named defendants in the Securities Class Action.

175. Danaher is also named as a defendant in the Securities Class Action, where the plaintiffs assert claims under the federal securities laws for, *inter alia*, violations of Section 10(b).

If the Company is found liable for violating the federal securities laws, the Company's liability will arise, in whole or in part, from the intentional, knowing, or reckless acts or omissions of Defendants Blair, McGrew, and Ligner, as alleged herein. The Company is entitled to receive contribution from Defendants Blair, McGrew, and Ligner in connection with the Securities Class Action.

176. Defendants Blair, McGrew, and Ligner, because of their positions of control and authority as Danaher directors and officers during the relevant period, had the power and/or ability to, and did, directly or indirectly, control or influence Danaher's general affairs, including the content of public statements about the Company, and had the power and/or ability, directly or indirectly, to control or influence the specific corporate statements and conduct complained of herein and in the Securities Class Action that violated Section 10(b) of the Exchange Act and Rule 10b-5.

177. Defendants Blair, McGrew, and Ligner are liable under Section 10(b), 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act. As a result, Defendants Blair, McGrew, and Ligner have damaged Danaher and are liable to the Company for contribution or indemnification.

**Count III**
**Derivative Claim for Breach of Fiduciary Duty**
**Against the Individual Defendants**

178. Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

179. As officers or directors of Danaher, the Individual Defendants owe (and owed) the Company fiduciary duties of due care and loyalty.

180. By virtue of their positions as officers and/or directors, the Individual Defendants at all relevant times had the power to and did control, influence, and cause the Company to engage in the practices complained of herein.

181. The Individual Defendants knowingly or recklessly breached their fiduciary duties to the Company by repeatedly approving and causing the Company to issue false and misleading statements to shareholders, by failing to promptly correct such false and misleading public statements, and by failing to disclose known adverse internal information that contradicted the Company's public representations. The Individual Defendants also knowingly or recklessly violated the Company's Code and the Audit Committee Defendants (List, Sanders, Lohr, and Stevens) knowingly or recklessly violated their duties and responsibilities established under the Company's Audit Committee Charter. The Individual Defendants further breached their fiduciary duties by failing to take any meaningful action to implement or enforce adequate internal controls or oversight mechanisms governing Danaher's public disclosure practices and insider-trading safeguards—which culminated in the Company issuing the false and misleading statements described above and permitted the Insider Trading Defendants to reap immense proceeds while in possession of material nonpublic information.

182. The Company's alleged liability in the Securities Class Action is a result of the conduct described herein and arises from the knowing, disloyal, and/or bad faith acts and omissions of the Individual Defendants.

183. The Individual Defendants acted in bad faith and violated their fiduciary duties of care and loyalty owed to the Company.

184. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary duties, the Company has sustained significant damages.

185. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

186. Plaintiff, on behalf of the Company, has no adequate remedy at law.

**Count IV**
**Derivative Claim for Unjust Enrichment**
**Against the Individual Defendants**

187. Plaintiff incorporates by reference and realleges each and every allegation previously alleged as though fully set forth herein.

188. By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of the Company.

189. The Individual Defendants were unjustly enriched as a result of the compensation, fees, and stock they received and other profits and benefits collected (including insider trading profits) while breaching their fiduciary duties, issuing false and misleading statements to shareholders, and committing the other wrongdoing alleged herein. Under these circumstances, it would be inequitable for the Individual Defendants to retain such profits and benefits.

190. Plaintiff, as a shareholder and representative of the Company, seeks restitution and disgorgement from the Individual Defendants, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained as a result of the wrongful conduct and breaches of fiduciary duties alleged herein.

191. Plaintiff, on behalf of the Company, has no adequate remedy at law.

**Count V**
**Derivative Claim for Insider Trading Against Defendants Blair, McGrew,**
**Filler, List, Stevens, Lohr, Weidemanis, Honeycutt, and Raskas**

192. Plaintiff incorporates by reference and realleges each and every allegation previously alleged as though fully set forth herein.

(a)     Determining that this action is a proper derivative action and that Plaintiff is an appropriate representative of the Company for said action;

(b)     Determining that a pre-suit litigation demand on the Board would be futile and is therefore excused;

(c)     Declaring that each of the Individual Defendants breached their fiduciary duties to the Company, were unjustly enriched, and violated the federal securities laws, and that the Insider Trading Defendants engaged in unlawful insider trading;

(d)     Determining and awarding to the Company the damages it sustained as a result of the breaches set forth above, disgorgement, and/or restitution from each of the Individual Defendants, jointly and severally, together with pre- and post-judgment interest thereon;

(e)     Directing Danaher to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Danaher and its shareholders from a repeat of the damaging events described herein, including implementing the following corporate governance changes: (i) enhancements to the Company's provisions controlling for insider selling, (ii) strengthening the Company's oversight of disclosure procedures, (iii) enhancements to the Audit Committee Charter and responsibilities of Audit Committee members, (iv) expanded training programs focused on compliance, internal controls policies, risk assessment, and other relevant topics, and (v) the appointment of additional independent directors to the Board;

(f)     Disgorging all unlawful insider trading profits;

(g)     Awarding to Plaintiff the costs and disbursements of this action, including reasonable fees and costs to Plaintiff's attorneys, accountants, and experts; and

(h)     Granting such further relief as the Court may deem just and proper.

Dated: June 9, 2026

Respectfully submitted,

*/s/ Matthew B. Kaplan*
Matthew B. Kaplan (DC Bar ID 484760)
The Kaplan Law Firm
1100 N. Glebe Road, Suite 1010
Arlington, VA 22201
Telephone:    (703) 665-9529
E-mail:    mbkaplan@thekaplanlawfirm.com

Dustin L. Schubert (*pro hac vice* forthcoming)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:    (415) 788-4220
E-mail:    dschubert@sjk.law

*Counsel for Plaintiff Michael Busch*

Docusign Envelope ID: D7430111-CD61-8FAA-8004-21F27F5DDB48

**VERIFICATION**

I, Michael Busch, am a plaintiff in this action. I hereby verify that I have reviewed the Verified Stockholder Derivative Complaint, know the contents thereof, and authorize its filing. I verify that I am a current holder of stock of Danaher Corporation ("Danaher"), was a holder of such stock at the time of the wrongs complained of in the Verified Stockholder Derivative Complaint, and continuously held shares of Danaher stock thereafter. As to those allegations and facts therein of which I have personal knowledge, those allegations and facts are true and correct to the best of my knowledge, information, and belief. As to those allegations and facts therein of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June 5, 2026

Michael Busch

Michael Busch